UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREVILLE PTY LIMITED, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STOREBOUND LLC,<br><br>    Defendant. | Case No. 12-cv-01783-JST<br><br>**ORDER DENYING STOREBOUND'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS AND GRANTING BREVILLE'S MOTION TO STRIKE STOREBOUND'S AFFIRMATIVE DEFENSE AND DISMISS STOREBOUND'S COUNTERCLAIMS**<br><br>Re: ECF Nos. 37 & 54. |

## I. INTRODUCTION

Breville Pty Limited and Breville USA, Inc. ("Breville") accuse Storebound LLC ("Storebound") of infringing Breville's patents on fruit and vegetable juicers. First Amended Complaint ("FAC"), ECF No. 30. Storebound served its invalidity contentions on October 29, 2012, and now moves for leave to amend those contentions. Storebound's Motion for Leave to Amend its Invalidity Contentions ("Storebound Mot."), ECF No. 54. In its answer to the FAC, Storebound brings three counterclaims and asserts thirteen affirmative defenses. Storebound LLC's Answer to the First Amended Complaint, Affirmative Defenses, Counterclaims and Demand for Jury Trial, ECF No. 32. Breville now moves to dismiss those counterclaims and strike Storebound's affirmative defense of inequitable conduct. Motion by Plaintiffs and Counterclaim Defendants Breville Pty Limited and Breville USA, Inc. to Dismiss Storebound LLC's Counterclaims and Strike its Thirteenth Affirmative Defense ("Breville Mot."), ECF No. 37.

After considering the moving papers, the Court hereby DENIES Storebound's motion for

leave to amend, and GRANTS Breville's motion.

## II. BACKGROUND

### A. Factual and Procedural Background

Breville manufactures and distributes small kitchen appliances such as fruit and vegetable juicers. FAC, ¶ 13. Storebound also sells and imports electronic juicers. FAC, ¶ 14; Storebound's Answer, Pages 2-17 of ECF No. 32 ("Answer"), ¶ 14. Breville brought this patent infringement complaint in April 2012, and filed the FAC in September. ECF Nos. 1 & 30. Breville alleges that Storebound has willfully infringed upon two of Breville's juicer patents: United States Patent Number 5,479,851 ("the '851 Patent") and United States Design Patent Number D439,808 S ("the '808 Patent"). FAC, ¶¶ 18-19 & 23-24.

In its answer to the FAC, Storebound asserts various affirmative defenses, including the defense that the '851 patent is unenforceable due to inequitable conduct. Answer, ¶¶ 35-100. Storebound also brings three counterclaims, seeking a declaratory judgment that the '851 patent is unenforceable due to inequitable conduct, alleging that Breville's litigation violates antitrust laws, and alleging "unfair competition." Counterclaims by Storebound, Pages 18-22 of ECF No. 32 ("Counterclaim"), ¶¶ 6-30. Breville filed a motion to dismiss these counterclaims, which the Court now considers. Breville Mot.

Pursuant to Patent Local Rule 3-3, Defendant served its invalidity contentions on October 29, 2012. Storebound Mot., at 2:11-12. It now moves to amend those contentions. Storebound Mot.

### B. Jurisdiction

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(a), since it arises under a federal statute relating to patents. 35 U.S.C. § 271(a).

## III. STOREBOUND'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS

Storebound moves to amend its invalidity contentions in order to contend that, because two diagrams in the '808 Patent show juicer bases angled from different angles, the patent is indefinite and therefore invalid. Storebound Mot., at 3:9-4:5.

2

### A. Legal Standard

"Amendment of . . . Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause." Local Patent Rule 3-6. "The local patent rules in the Northern District of California . . . require[] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions *when new information comes to light in the course of discovery*." O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) (emphasis added). The rules are "designed specifically to 'require parties to crystallize their theories of the case early in the litigation' so as to 'prevent the 'shifting sands' approach to claim construction.'" O2 Micro, 467 F.3d at 1364 (quoting Amtel Corp. v. Info Storage Devices, Inc., 1998 WL 775115, at *2 (N.D.Cal. Nov. 5, 1998). "Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative." Atmel, 1998 WL 775115, at *2.

### B. Discussion

In this case, Storebound moves to amend not because of any new materials that have come to light in discovery, but rather because it wishes to make a new argument about the invalidity of the '808 Patent. Storebound has been aware of the patents at issue – and the diagrams in those patents – since the complaint was filed more than a year ago. In its motion, Storebound offers no explanation for its failure to make these contentions before March 2013, beyond asserting that Storebound "realized for the first time" that drawings in the '808 Patent were inconsistent sometime around early January 2013. Opp. at 4:13-14. "The party seeking to amend its contentions bears the burden of establishing diligence." O2 Micro, 467 F.3d 1355 at 1366–67 (citing Genentech, Inc. v. Amgen, Inc., 289 F.3d 761, 774 (Fed.Cir. 2002)). Storebound has not met that burden.

The cases Storebound cites do not assist its position. In Vasudevan Software, Inc. v. Int'l Bus. Machines Corp., 2011 WL 940263, at *3 (N.D. Cal. Feb. 18, 2011), the court found good cause where the moving party had received new information in discovery after filing its original contentions. In Kilopass Tech. Inc., Inc. v. Sidense Corp., 2011 WL 5212259, at *3 (N.D. Cal.

3

Nov. 2, 2011), the court *denied* leave to amend.  In no case cited by Storebound did a trial court permit amendment based on information that had been in the moving party's possession for more than a year.

In exercising its discretion to grant or deny leave to amend, a court "considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted." Acer, Inc. v. Tech. Properties Ltd., 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010).  "Only if the moving party is able to show diligence may the court consider the prejudice to the non-moving party." Apple, Inc. v. Samsung Electronics Co., Ltd., 2012 WL 1067548, at *2 (N.D. Cal. Mar. 27, 2012).  Since Storebound has failed to meet its burden of establishing diligence, the Court does not address Storebound's argument that leave to amend would not prejudice Breville.

## IV. BREVILLE'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND STRIKE DEFENDANT'S INEQUITABLE CONDUCT DEFENSE

Breville moves to strike Storebound's affirmative defense of inequitable conduct and dismiss Defendant's first counterclaim seeking a declaratory judgment that the '851 Patent is unenforceable due to inequitable conduct.  Breville Mot., at 4:14-8:28.  Plaintiffs also move to dismiss Defendants' antitrust and unfair competition counterclaims. Id. at 9:1-18:10.

### A. Inequitable Conduct Affirmative Defense and Counterclaim

Breville's motion to strike and its motion to dismiss Storebound's first counterclaim both hinge on the viability of Storebound's claim of inequitable conduct.

#### 1. Factual Background

Storebound asserts that one or more persons involved in the prosecution of the '851 Patent were aware of material information relevant to the '851 Patent but did not disclose that information to the United States Patent & Trademark Office ("USPTO"). Answer, ¶ 35.  According to the counterclaim, Breville submitted its application for the '851 Patent one day after filing an application to the European Patent Office ("EPO") for a related patent.[1]  Answer, ¶¶ 38

---

[1] The Court refers to patent application number 433,606, which eventually issued as the '851 Patent, as the "'851 Patent Application."

& 43. Pursuant to an amendment filed in July 1995, one of the claims in the '851 Patent Application included a limitation which required a feed tube to have "an internal diameter which is substantially equal to a diameter of . . . [the] grating disc." Answer, ¶ 62-63. In September 1995, the EPO transmitted a Search Report to Breville indicating that it had discovered prior art which rendered the European patent application unpatentable. Answer, ¶¶ 66-81. The Search Report cited Great Britain patent application GB-A-852 220 ("the '220 GB Patent Application"). Answer, ¶ 69. "The '220 GB Patent Application taught a cutting disk with a cutting area that had a diameter that was substantially the same as the inner diameter of the feed chute." Answer, ¶ 89.

The closest prior art of record discovered by the USPTO only disclosed cutting discs larger than the diameter of the feed chute. Answer, ¶¶53-57 & 69-79. Storebound alleges that personnel at Breville failed to disclose the '220 GB Patent Application to the USPTO, and the USPTO issued the '851 Patent in January 1996. Answer, ¶¶ 83 & 100. Storebound alleges that Breville amended the claims in its European application to avoid the prior art. Answer, ¶¶ 96-99.

### 2. Legal Standard

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327, n.3 (Fed. Cir. 2009). These two prongs have different pleading standards.

Since an inequitable conduct claim sounds in fraud, a plaintiff must plead the "circumstances constituting" the inequitable conduct with particularity under Federal Rule of Civil Procedure 9(b). Exergen, 575 F.3d at 1331 (citing Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega systems, LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). "[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen, 575 F.3d at 1328. See also In re BP Lubricants USA, Inc., 637 F.3d 1307, 1311 (Fed. Cir. 2011) ("Exergen's pleading

requirements apply to all claims under Rule 9(b)," and to motions to dismiss as well as motions for leave to amend).

In contrast, "'knowledge' and 'intent' may be averred generally." However, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." Id. at 1328-29.

In sum, "[a] charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." Delano Farms Co. v. California Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) cert. denied, 133 S. Ct. 644, 184 L. Ed. 2d 456 (U.S. 2012).

Under Federal Rule of Civil Procedure 12(f), a district court may "strike from a pleading an insufficient defense." It is appropriate to strike an affirmative defense which is premised on an insufficiently pled claim of inequitable conduct. See, e.g., Mag Instrument, Inc. v. JS Products, Inc., 595 F. Supp. 2d 1102, 1109-10 (C.D. Cal. 2008).

**3. Discussion**

    **a. The Circumstances of Inequitable Conduct**

        **1. The "Who"**

In its counterclaim, Storebound alleges that "one or more persons involved in the prosecution of the '851 Patent, including the inventors Stephen J. McClean and Richard W. Yallop, as well as one or more other persons at the Breville Plaintiffs" were aware of the proceedings in the EPO proceedings. Answer, ¶ 35. Storebound alleges that the "inventors and the other persons at the Breville Plaintiffs responsible for prosecution of the '851 Patent" were aware of the references in the EPO application" and did not disclose them to the USPTO. Id., ¶¶ 35 & 49. The Breville Parties move to dismiss because the counterclaim "fails to identify 'who' specifically engaged in inequitable conduct."

6

In <u>Exergen</u>, the Federal Circuit found an inequitable conduct claim insufficiently pled for failing to "name the specific individual associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it." The complaint in <u>Exergen</u> alleged only that "Exergen, its agents and/or attorneys" had committed inequitable conduct. Storebound has named two specific individuals, saying they are among those who were aware involved in prosecuting the '851 Patent. However, to the extent the counterclaim encompasses other, unnamed individuals employed by Breville, it fails to satisfy the pleading standard in <u>Exergen</u>. This is particularly important since it is specific individuals, rather than organizations, who owe a duty of disclosure to the USPTO. <u>See</u> Manual of Patent Examining Procedure § 2001.01 (8th ed., rev. 2, May 2004).

Storebound does not cite any post-<u>Exergen</u> cases in which a court permitted an inequitable conduct claim to be pled against unidentified individuals. Instead, it argues that since "[t]he identify of the patent manager at Breville who was responsible for the prosecution of the '851 Patent and the related applications is uniquely known to the Breville Plainitffs," it has "answered the 'who' question to the best of its ability," and "should be allowed to conduct discovery" to find the names of the responsible individual. Storebound's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Storebound's Counterclaims and to Strike its Inequitable Conduct Defense, ECF No. 39 ("Opp."), at 10:4. But the purpose of a heightened pleading standard is to make it very difficult to allege claims against parties whose identities are unknown at the time of the pleading. In "a limited class of corporate fraud cases where the evidence of fraud is within a defendant's exclusive possession," the Ninth Circuit applies a relaxed version of the Rule 9(b) pleading standard. <u>U.S. ex rel. Lee v. SmithKline Beecham, Inc.</u>, 245 F.3d 1048, 1052 (9th Cir. 2001). However, the Federal Circuit "appl[ies its] own law, not the law of the regional circuit, to the question of whether inequitable conduct has been pleaded with particularity under Rule 9(b)." <u>Exergen</u>, 575 F.3d 1312 at 1326. Absent an instruction from the Federal Circuit that the standard can be relaxed, this Court will apply the standard from <u>Exergen</u>. <u>See</u> <u>Aevoe Corp. v. AE Tech. Co., Ltd.</u>, 2013 WL 876036, at *3, n.2 (D. Nev. Mar. 7, 2013).

The fact that Storebound has failed to name a specific individual who engaged in

7

1    inequitable conduct is sufficient ground for dismissing the counterclaim as inadequately pled.
2    However, for the benefit of the parties, the Court addresses the remainder of Breville's arguments
3    about the sufficiency of the counterclaim as though Storebound had brought the claim against
4    specifically identified individuals.

### 2. The 'What' and 'Where'

To plead the 'what' and 'where' of inequitable conduct, the claimant must "identify which claims, and which limitations in those claims, the withheld references are relevant to." Exergen, 575 F.3d at 1329. In its motion, Breville argues that Storebound's counterclaim fails to identify the claims to which the European applications are relevant. Breville Mot. at 7:19. The counterclaim focuses specifically on the fact the EPO had informed Breville of a previous application in which "the cutting teeth are within the inner diameter of the feed tube." Answer, ¶¶ 78-81. All of the claims in the '851 Patent include the limitation regarding the size of the cutting disk, and therefore the allegedly withheld references are relevant to all of those claims and all of those limitations. The counterclaim could be clearer on this point, but it adequately identifies the claims and limitations to which the withheld references are relevant.

### 3. The 'Why' and 'How'

An inequitable conduct claimant must also plead the "particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record," because such allegations are necessary "to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." Exergen, 575 F.3d at 1329-30. Breville argues that Storebound has failed to prove that the withheld references are material and not cumulative. Breville Mot. at 8:2; Reply in Further Support of Motion by Plaintiffs and Counterclaim Respondents Breville Pty Limited and Breville USA, Inc. to Dismiss Storebound LLC's Counterclaim ("Reply"), ECF No. 43, at 2:20-4:5. The Court does not read Exergen as requiring a court to determine, on the face of the pleadings, whether the allegedly missing material is in fact material and not cumulative. Instead, it requires a claimant to "identify" the claim limitations which are supposedly absent because "such allegations are *necessary to explain why*" the information is material and not

8

cumulative. 575 F.3d at 1329 (emphasis added). In Exergen, the claimant had failed to identify the supposedly absent information. Here, the counterclaim specifically identifies the allegedly withheld information: the disclosures in the '220 GB Patent.

Breville argues that the withheld information is immaterial because it is cumulative of other information that was already before the USPTO. Reply at 2:20-4:5. The Court expresses no opinion on that argument. It would be inappropriate to judge the viability of Storebound's claim of inequitable conduct on the basis of evidence and argument produced by Storebound in its reply brief. If the Breville Plaintiffs' argument is correct, then Storebound's counterclaim will fail. But the 'why' and the 'how' of the allegation have been pled with specificity, and they "plausibly suggest an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).

### b. Scienter

The counterclaim does not contain sufficient facts to support a plausible inference that Mr. McLean and Mr. Yallop acted with intent to deceive the USPTO, because it does not clearly allege that Mr. McLean and Mr. Yallop were the specific individuals who withheld a material reference from the USPTO. Compare Answer at ¶ 35 (stating that Mr. McLean and Mr. Yallop were among those aware of the EPO application, and that "the inventors" were among those who did not disclose material information to the USPTO) with Answer at ¶¶ 35, 100 (stating only that "individuals at the Breville Plaintiffs" breached their duty to disclose, and that "the Breville Plaintiffs" made a deliberate decision to withhold material references from the USPTO).

Even if Storebound had named specific individuals, the allegations do not provide sufficient grounds to infer scienter. Noting that "[a] reference may be many pages long, and its various teachings may be relevant to different applications for different reasons," the Exergen court held that "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." Exergen, 575 F.3d at 1330. That is what Storebound asks this Court to infer in this case. Storebound alleges that a Breville agent received the European Search Report which contained a *reference* to the '220 GB Patent Application. Answer at ¶ 67. This is an insufficient factual basis to infer that the Breville agent who actually submitted the '851 Patent application knew of the specific material

information contained in the '220 GB Patent Application and withheld it with the intention to deceive the USPTO. Later communications between the EPO and Breville indicate that some Breville employees later knew of the specific information in the '220 GB Patent Application, but since these communications occurred after the '851 Patent issued, they do not provide any basis to infer that any specific individual knew of the specific information at the time Breville submitted its patent application to the USPTO. See Answer at ¶¶ 93-99.

### B. Antitrust Counterclaim

Defendants' second counterclaim argues that Plaintiff's lawsuit is an "attempt to monopolize the market for juicers and juice extractors, in violation of federal and state antitrust laws including Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2."[2] Id., ¶ 19. Plaintiffs move to dismiss on the grounds that the claim is barred by *Noerr-Pennington* immunity, and that, even if it were not, Defendant's counterclaim fails to allege sufficient facts to state a claim of a Section 2 violation. Since the Court agrees with Breville's first argument, it need not address its second one.

#### 1. Legal Standard

Section 2 of the Sherman Antitrust Act makes it a felony to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States." 15 U.S.C. § 2. However, under the doctrine of *Noerr-Pennington* immunity, antitrust liability cannot attach to the act of petitioning government for redress. Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961); Mine Workers v. Pennington, 381 U.S. 657, 669 (1965). *Noerr-Pennington* immunity applies when an entity seeks redress to the courts by pursuing litigation. Calif. Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). Liability can only attach if the litigation is a "mere sham to cover . . . an attempt to interfere directly with

---

[2] The Court presumes that the "state antitrust laws" to which Breville refers are contained in California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq*. Since "[t]he analysis under California's antitrust law mirrors the analysis under federal law," Cnty. of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001), and since *Noerr-Pennington* immunity also applies to Cartwright Act claims, see Blank v. Kirwan, 39 Cal.3d 311, 325-26 (1985), any Cartwright Act claims are insufficiently pled for the same reasons discussed herein. In any amended counterclaim, Storebound must cite the particular statutory or common law causes of action they are invoking, in order to "give fair notice . . . to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) cert. denied, 132 S. Ct. 2101 (U.S. 2012).

10

the business relationships of a competitor." Noerr, 365 U.S. at 144.

To qualify as "sham litigation" undeserving of antitrust immunity, litigation must satisfy two independent criteria. First, the claim must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60 (1993) ("PRE"). "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail." Id. Second, if the litigation is objectively baseless the court also considers "the litigant's subjective motivation" to determine whether the purpose of the conduct was to interfere directly with the business relationships of a competitor instead of to achieve a legal remedy. Id. at 60-61.

"Where a claim involves the right to petition governmental bodies under *Noerr-Pennington* . . . we apply a heightened pleading standard." Oregon Natural Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991). "[I]n order to state a claim for relief . . . a complaint must include allegations of the specific activities" defendant has engaged in that deprive it of *Noerr-Pennington*'s protection. Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers, 542 F.2d 1076, 1082 (9th Cir. 1976).

**2. Discussion**

Storebound alleges two sets of facts which it claims are sufficient to pierce *Noerr-Pennington* immunity. First, it alleges that, for the same reasons discussed *supra*, Breville knows that the '851 Patent is unenforceable due to inequitable conduct. Counterclaims, ¶¶ 11-13. Since this Court concludes that Storebound has failed to plead a viable inequitable conduct claim, it does not conclude that the possibility of an inequitable conduct defense renders the '851 Patent so obviously unenforceable that no reasonable litigant could expect to assert an infringement claim.

Storebound's second argument is that Breville's '851 infringement claim is "frivolous" because the '851 Patent discloses a feed tube having the same diameter as the cutting disk, while in Storebound's juicer the disc extends beyond the diameter of the feed tube. Counterclaim, ¶¶ 13-18. This allegation does not demonstrate that the basis of Breville's lawsuit is "so objectively

1   baseless . . . that no reasonable litigant could realistically expect success on the merits." PRE,
2   508 U.S. at 60.
3         First of all, this Court agrees with others that have held that an "allegation that a single
4   claim is objectively baseless does not bring . . . [the] filing of the entire complaint within the sham
5   exception." Meridian Project Sys., Inc. v. Hardin Const. Co., LLC, 404 F. Supp. 2d 1214, 1222
6   (E.D. Cal. 2005). Storebound offers no alternative construction of BRE's explicit language: "the
7   *lawsuit* must be objectively baseless." 508 U.S. at 60 (emphasis added). Instead, it offers a
8   slippery slope prediction: "[i]f that is the law, patent holders will be able to improperly wield their
9   monopoly-like assets with immunity from the antitrust laws as long as they have at least one
10  patent they can reasonably contend is infringed." Opp. at 13:11-13. Whatever potential danger
11  this might pose in other cases, it is not presented by a lawsuit which brings two infringement
12  claims, one of which is concededly nonfrivolous. Since Storebound fails to argue that Breville's
13  '808 Patent infringement claim is objectively baseless, it has failed to demonstrate that *Noerr-*
14  *Pennington* immunity does not apply to Breville's lawsuit.
15        More importantly, the Court has not yet construed the claims in the'851 Patent, and
16  Breville argues that it can successfully maintain its infringement claim by construing the term
17  "substantially equivalent" to encompass Storebound's juicer and the '851 Patent. While
18  Storebound contends to the contrary, this appears to be valid debate between plausible positions.
19  At this stage of the litigation, the Court cannot conclude that the basis of Breville's '851 Patent
20  infringement claim is so objectively meritless that it could only be a sham lawsuit brought in bad
21  faith.

22  **C.   Unfair Competition**

23        Storebound's third counterclaim is described only as an "Unfair Competition" claim.
24  Counterclaim, ¶26. It is based on the same factual allegations as its "sham litigation" claim.
25  Counterclaim, ¶¶ 27-28. Breville has construed this as a claim under California's Unfair
26  Competition law ("U.C.L."), Cal. Bus. & Prof. Code § 17200 *et seq*, and has moved to dismiss on
27  the grounds that U.C.L. claims are preempted for any activity which is entitled to *Noerr-*
28  *Pennington* immunity. Breville Mot., 17:13-18:1. In its opposition brief, Storebound appears to

1 concede that its "unfair competition" claim rises and falls on the strength of its claim of "sham
2 litigation." Opp. at 15:9-14. Therefore, this counterclaim must be dismissed for the same reasons
3 discussed at IV-B, *supra*.

4 If Storebound chooses to re-plead this counterclaim, it must specify which specific
5 statutory or common law cause of action it is invoking, in order to "give fair notice . . . to enable
6 the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d at 1216.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Storebound's motion for leave to amend its invalidity contentions.

The Court also for the foregoing reasons GRANTS Breville's motion to strike Storebound's counterclaims and its affirmative defense of inequitable conduct.

Storebound is ordered to file an amended answer within thirty days of this order. The amended answer must either delete the dismissed affirmative defenses and counterclaims, or shall allege additional facts sufficient to support the affirmative defense and counterclaims. If Storebound chooses to re-plead those claims, it must specifically identify to the Court the amendments it has made to overcome the deficiencies addressed herein.

**IT IS SO ORDERED**.

Dated: April 24, 2013

_____
JON S. TIGAR
United States District Judge