UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BREVILLE PTY LIMITED, et al.,

        Plaintiffs,

    v.

STOREBOUND LLC,

        Defendant.

Case No.  12-cv-01783-JST

**ORDER CONSTRUING TERMS OF U.S. PATENT NO. 5,479,851**

On June 18, 2013, the Court held a hearing for the purpose of construing disputed terms in the claims of United States Patent No. 5,479,851 ("the '851 Patent").  After considering the parties' briefs, the arguments and evidence presented at the hearing, and the relevant portions of the record, the Court now construes the terms as set forth below.

## I.    BACKGROUND

### A.    Procedural History

In May 1995, Plaintiff Breville Pty Limited ("BPL") filed patent application number 08/533,606 with the U.S. Patent & Trademark office, which later issued as the '851 Patent, entitled "Fruit and Vegetable Juicer."  See Exhibit B to Declaration of Joseph A. Meckes in Support of Plaintiffs' Opening Claim Construction Brief, ECF No. 60-3.

In April 2012, BPL and Plaintiff Breville USA, Inc. ("BUSA") (collectively, "Breville") brought a complaint for patent infringement against Defendant Storebound LLC ("Storebound").  Complaint, ECF No. 1.  Breville alleges that Storebound's JB001 CM fruit and vegetable juicer infringes the '851 Patent as well as United States Design Patent Number D439,808 S ("the '808 Design Patent").  First Amended Complaint, ECF No. 30.

The parties agree that the drawings of the '808 Design Patent define the scope of that

United States District Court
Northern District of California

patent's claims, and that no construction of that patent is necessary.  However, the parties initially disputed the construction of eight terms in the '851 Patent.  Patent Local Rule 4.3 Joint Claim Construction and Prehearing Statement, ECF No. 47.  The parties identified the terms "substantially equal," "grating disc," and "integral" as those whose construction is likely to be most significant in disposing of the case.  The parties have each submitted claim construction briefing in accordance with the Patent Local Rules.  Breville Pty Limited and Breville USA, Inc.'s Patent Local 4-5(a) Opening Claim Construction Brief, ("Open. Br."), ECF No. 60; Storebound's Responsive Claim Construction Brief ("Resp. Br."), ECF No. 68; Breville Pty Limited and Breville USA, Inc.'s Patent Local 4-5(c) Reply Claim Construction Brief ("Reply Br."), ECF No. 74.

In its Responsive Brief, Storebound has consented to Breville's construction of three of the eight terms.  Therefore, the Court will only construe the five terms whose construction is in dispute.  See MBO Laboratories, Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1331 (Fed. Cir. 2007) (courts "lack the power to construe other terms not disputed by the parties"); see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 521 F.3d 1351, 1362-63 (Fed. Cir. 2008) ("when the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it," but "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims").

**B.     Legal Standard**

The construction of terms found in patent claims is a question of law to be determined by the Court.  Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  "[T]he interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim."  Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).  Consequently, courts construe claims in the manner that "most naturally aligns with the patent's description of the invention."  Id.

The first step in claim construction is to look to the language of the claims themselves.  "It

is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" <u>Phillips</u>, 415 F.3d at 1312 (<u>quoting</u> <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). A disputed claim term should be construed in light of its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." <u>Phillips</u>, 415 F.3d at 1312. In some cases, the ordinary meaning of a disputed term to a person of skill in the art is readily apparent, and claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." <u>Id.</u>, at 1314. Claim construction may deviate from the ordinary and customary meaning of a disputed term only if (1) a patentee sets out a definition and acts as his own lexicographer, or (2) the patentee disavows the full scope of a claim term either in the specification or during prosecution. <u>Thorner v. Sony Computer Entm't Am. LLC</u>, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Ordinary and customary meaning is not the same as a dictionary definition. "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent. Yet heavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." <u>Id.</u>, at 1321. Typically, the specification "is the single best guide to the meaning of a disputed term." <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is therefore "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of claims." <u>Phillips</u>, 415 F.3d at 1315. However, while the specification may describe a preferred embodiment, the claims are not necessarily limited only to that embodiment. <u>Id.</u>

Finally, courts may consider extrinsic evidence in construing claims, such as "expert and inventor testimony, dictionaries, and learned treatises." <u>Markman</u>, 52 F.3d at 980. Expert testimony may be useful to "provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is

consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." <u>Phillips</u>, 415 F.3d at 1318. However, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." <u>Id.</u> If intrinsic evidence mandates the definition of a term that is at odds with extrinsic evidence, courts must defer to the definition supplied by the former. <u>Id.</u>

**C.     Jurisdiction**

This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

**II.     CLAIM CONSTRUCTION**

**A.     "Substantially Equal"** (Claim 1)

| Disputed Claim Term | Breville's Proposal | Storebound's Proposal |
|---|---|---|
| "Said feed tube having an internal diameter which is substantially equal to a diameter of said grating disc" | "The internal diameter of the feed tube, measured at the bottom of the feed tube, is substantially equal to, but not necessarily the same as, the diameter of the grating disc" | The claim term "substantially equal" should be construed to mean "equal or less than, within manufacturing tolerances." |

Figure 2 of the '491 Patent discloses a juicer in which the grating disc appears to be essentially the same width as the feed tube, extending perhaps beyond the internal diameter of the feed tube but not beyond its external diameter. Storebound places significant weight on this figure.

Since claims are not necessarily limited to a specific embodiment, <u>Phillips</u>, 415 F.3d at 1315, this figure would be thin support for Storebound's limiting construction even if Figure 2 were the only figure in the specification. In this case, however, Storebound's construction is further belied by other elements of the specification. Figures 4 and 5, which show a much closer depiction of the feed tube and grating disc than Figure 2, appear to disclose a grating disc that is wider than both the external and internal diameters of the feed tube. Since Storebound's construction appears to be inconsistent with those figures, and in significant tension with the

United States District Court
Northern District of California

1    description of the embodiments, it is very unlikely to be correct.

2           The gravamen of Storebound's argument derives not from the patent terms or the

3    embodiments but rather from the background and summary of the invention.  '491 Patent, at 1:1-

4    58.  In this portion of the specification, the inventor states that the problem with the prior art is that

5    "it has not been hitherto possible to make full use of the circular grating surface of the disc,"

6    prompting the need for a juicer "in which full use can be made of the entire grating surface of the

7    disc."  Id., at 1:20-23, 1:30-31.  Storebound argues that this statement of purpose necessarily

8    requires the grating disc to be smaller than the external diameter of the feed tube.  But that is not

9    necessarily the case.  A juicer can still 'fully use' a grating disc that extends slightly beyond the

10   external diameter of the feed tube.  For example, the disc could grate soft fruit that escapes

11   through the gap between the bottom of the tube and the disc.

12          Moreover, even assuming that the only function of the disc is to grate fruit that is fed

13   directly through the feed tube, the *external* diameter of the tube is irrelevant to that function.  The

14   *internal* diameter of the feed tube determines how much of the grating disc directly encounters the

15   fruit.  The external diameter may or may not exceed the diameter of the disc, depending upon the

16   thickness of the tube walls, but whether or not it does so has no effect on the amount of the disc

17   that directly encounters fruit.  Since Storebound's construction concedes that the internal diameter

18   of the feed tube can be less than the width of the disc, it has already conceded that the entire disc

19   need not be 'used' in the sense of directly encountering the fruit fed through the tube.

20          Storebound's final argument is that Breville's construction introduces too much ambiguity

21   and provides insufficient guidance to determine how much 'equality' is required by the claim.

22   This appears to be an indefiniteness contention, which Storebound has not made in this case.  See

23   Storebound's Invalidity Contentions, Exhibit B to Declaration of Glen Diehl, ECF No. 55.  "While

24   [the Federal Circuit has] acknowledged the maxim that claims should be construed to preserve

25   their validity, [they] have not applied that principle broadly, and [they] have certainly not endorsed

26   a regime in which validity analysis is a regular component of claim construction."  Phillips, 415

27   F.3d at 1327.  The applicability of the rule "depends on the strength of the inference that the PTO

28   would have recognized that one claim interpretation would render the claim invalid, and that the

PTO would not have issued the patent assuming that to be the proper construction of the term." Id. at 1328.

The case on which Storebound primarily relies, Seattle Box Co. v. Industrial Crating & Packaging, Inc., 731 F.2d 818 (Fed Cir. 1984), is an indefiniteness case and is therefore of limited, if any, applicability.   However, even assuming that Seattle Box applied, it requires only that "[w]hen a word of degree is used the district court must determine whether the patent's specification provides some standard for measuring that degree." Id., 731 F.2d at 826.  While the term "substantially equal" is not mathematically precise, it does provide a standard for measuring degree that is susceptible to  reasonable application.  To take a pertinent example, a jury applying the standard would be able to distinguish the invention claimed from the prior art of U.S. Patent No. 2,481,010 (the "Gundelfinger Patent").  Figure 3 of that patent discloses a juicer with a feed tube with a diameter that is not "substantially equal to" the width of the grating disc.

The Federal Circuit has generally interpreted the term "substantially" to denote approximation.  See, e.g., Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1310-11 (Fed. Cir. 2003) ("words of approximation, such as 'generally' and 'substantially,' are descriptive terms . . . 'to avoid a strict numerical boundary.').  While Storebound's brief argues that a person of ordinary skill in the art would interpret the claim as they propose, they do not argue that the terms in the claim would carry any specialized meaning to those skilled in the art. See Resp. Br., at 9-11.  Since the everyday use of the term "substantially" is supported by the intrinsic record, the Court applies it here.  To require near-perfect equality from the disc would be to read the term "substantially" out of the claim.

The Court therefore adopts Breville's proposed construction.

**B.** **"Grating Disc"** (Claims 1, 6 & 8)

| Disputed Claim Term | Breville's Proposal | Storebound's Proposal |
|---|---|---|
| "Grating Disc" | "A disc having grating teeth" | "A disc entirely covered with grating teeth" |

The specification discloses the inventor's definition of a "grating disc": "[t]he present

United States District Court
Northern District of California

1  invention relates to a fruit and vegetable juicer of the kind in which a fruit or vegetable to be

2  juiced is forced downwardly onto a rotating horizontal disc having grating teeth." '851 Patent, at

3  1:6-7.  The "specification acts as a dictionary where it expressly defines terms used in the claims,"

4  Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1377 (Fed. Cir. 2005), and the specification's express

5  definition does not include the concept that the disc must be "entirely" covered with grating teeth.

6  Moreover, Figure 4 discloses an embodiment in which the grating disc has space between the

7  teeth, such that the disc is not entirely covered.

8       At oral argument, it emerged that what Storebound means by the term "entirely covered" is

9  that the grating teeth extend to the furthest edge of the disc.  In Storebound's view, a disc would

10  fall within the claim if it had two lines of teeth extending from the center of the disc to its furthest

11  edge, even if there was nothing but flat space covering the overwhelming majority of the surface

12  of the disc.  The Court concludes that a jury would be very unlikely to interpret the term "entirely

13  covered" in this manner.

14       Storebound's other arguments for its proposed construction are essentially the same as the

15  arguments it makes its construction of the term "substantially equal."  See Resp. Br., at 15:6-16:5.

16  Namely, Storebound argues that only its construction would serve the invention's purpose of using

17  "substantially all" of the grating disc.  The Court is not persuaded for many of the same reasons

18  discussed at Part III-A, supra.  It strains common sense to conclude that a grating disc is not "fully

19  used" unless its grating teeth cover every millimeter of the diameter of the disc.  Storebound offers

20  no evidence to demonstrate that one skilled in the art would understand the terms to require such a

21  limitation.  Lastly, it is not clear to the Court how one can determine whether a disc is "entirely

22  covered with teeth, as opposed to partially covered.

23       The Court therefore adopts Breville's proposed construction.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

C. **"A food pusher insertable into said feed tube and pressing fruit and vegetable down onto said grating disc for grating"** (Claim 1)

| Disputed Claim Term | Breville's Proposal | Storebound's Proposal |
|---|---|---|
| "A food pusher insertable into said feed tube and pressing fruit and vegetable down onto said grating disc for grating" | "a food pusher insertable into the feed tube and capable of pressing fruit and vegetable inserted into the feed tube down onto the grating disc for grating" | Storebound will contend that the term "fruit and vegetable" is a limitation of claims |

Storebound does not dispute that this is an apparatus claim, and as such "cover[s] what a device is, not what a device does." Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1468 (Fed. Cir. 1990). Yet Storebound contends that "[s]ince the first time 'fruits and vegetables' appear as an element is in the body of the claim, they should be considered limitations of claim 1." Resp. Br., at 16:16-18. That is to say, Storebound suggests that the claimed apparatus is a pusher-and-fruit-and-vegetable combination. In effect, Storebound argues that one skilled in the art, after reading the entire patent, would conclude that the patent claims only a juicer that comes equipped with fruits and vegetables already being pressed by the pusher against the grating disc.

Storebound's construction is unreasonable. The claim language presumably should have been drafted more carefully, to use the word "for" in place of the word "and." But "it is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim." CBT Flint Partners, LLC v. Return Path, Inc., 654 F.3d 1353, 1358 (Fed. Cir. 2011). Certainly undertaking a reparative construction is preferable in this case to deferring to a scrivener's error to the point of an absurd result.

Storebound also argues, somewhat less than clearly, that rather than "dismissing what is, at a minimum, an ambiguity, when given 'an equal choice between a broader and narrower meaning of a claim, and there is an enabling disclosure that indicates the applicant is at least entitled to a claim having the narrower meaning, . . . [then] the notice function of the claim [is] best served by adopting the narrower meaning.'" Resp. Br., at 17:1-4 (quoting Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed. Cir. 1996). Even assuming the Court agreed that there were a reasonable ambiguity here, Storebound does not identify what enabling disclosure indicates

the potential existence of a pusher-and-fruit combination apparatus.

"A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." Novo Indus., L.P. v. Micro Molds Corp., 350 F.3d 1348, 1357 (Fed. Cir. 2003).  Here, there is no reasonable debate, and Storebound has not cited any part of the prosecution history suggesting that its interpretation is plausible.  Therefore, the Court adopts the correction that is proposed in Breville's proposal.

**D.      "Bifurcated"** (Claim 3)

| Disputed Claim Term | Breville's Proposal | Storebound's Proposal |
|---|---|---|
| "Bifurcated" | "having a split or branching component or aspect'" | "split into two parts" |

The parties appear to dispute whether the patent claims a feed tube is a single piece with two branches, or whether the feed tube is composed of two distinct and separate parts.  The specification discloses that "the food pusher 19 is bifurcated to leave a central space 20 so that when it is pushed down it passes on either side of the knife 17," and the pusher is depicted in Figure 2 as a single piece, with two branches.  '851 Patent, at 2:62-64.  Storebound contends that the figure "shows the feed tube split into two parts or branches." Resp. Br., at 17:17-19.  What it means by this is not clear.  Nothing in the figure, or anything else in the patent, suggests they are two separate parts.

Beyond its critique of Breville's proposed construction, Storebound offers no evidence, intrinsic or extrinsic, indicating that the feed tube has two distinct parts.  Id. at 17:9-16.  The Court finds nothing ambiguous or unclear about Breville's proposed language, which aligns with the specification.

The Court adopts Breville's proposed construction.

/ / /

/ / /

/ / /

United States District Court
Northern District of California

E.    **"Grating Dish"** (Claims 4 & 5)

| Disputed Claim Term | Breville's Proposal | Storebound's Proposal |
|---|---|---|
| "Grating dish" | "grating disc" | Storebound contends "grating dish" is indefinite and cannot be construed. |

This, too, appears to be a drafting error, although perhaps a less obvious one than the one discussed at Part III-C, *supra*.  Here, however, the burden on Storebound is higher.  To prove indefiniteness, Storebound must demonstrate "by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim language, the specification, the prosecution, and the knowledge in the relevant art."  Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  "Claims are considered indefinite when they are not amenable to construction or are insolubly ambiguous," but are not indefinite if they "can be given any reasonable meaning."  Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp., 587 F.3d 1339, 1347 (Fed. Cir. 2009).

Here, reading the patent as a whole, it is reasonable to determine that the drafters meant "grating dish" and "grating disc" to be synonyms.  The specification switches back in forth between the two terms while maintaining a thread of common reference which indicates that a single object, not two separate ones, is being described.  For example, Claim 6 uses the term "said grating disc" when referring to a structure actually described as a "grating dish" in Claim 4. '491 Patent, at 4:56-57.

This was poor draftsmanship, made poorer by an apparent error in Claim 4.  That claim recites a "fruit and vegetable juicer as defined in claim 1; and further comprising *a* grating dish having an axis . . . []."  Id., at 4:45-47 (emphasis added).  Since the claim uses the indefinite article rather than the definite, a reader encountering this language alone might think that perhaps a different structure was being recited, instead of the "grating dish" recited in claim 1.

But one with skill in art, reading the patent as a whole, could reasonably resolve this ambiguity.  In the description of the embodiment recited in Claim 4, only a single grating disc is described, and only one disc is visible in Figure 4. Id., at 3:1-13.  In all, nothing in the specification that even hints at the existence of a "grating dish" that is distinct from the "grating

10

disc."  To prove invalidity, a possible ambiguity is not enough.  It must be impossible to give the

term "any reasonable meaning."  <u>Ultimax</u>, 587 F.3d at 1347.

Once the patent as a whole is considered, there is no reasonable dispute whether a second

grating "dish" is claimed by the patent, and Storebound cites nothing in the prosecution history

indicating that there might be.  Therefore, the Court adopts the corrective construction proposed

by Breville.

## IV.  CONCLUSION

For the foregoing reasons, the Court construes the disputed terms in U.S. Patent No.

5,479,851 as follows:

| Term | Construction |
|------|-------------|
| "Said feed tube having an internal diameter which is substantially equal to a diameter of said grating disc" (Claim 1) | "The internal diameter of the feed tube, measured at the bottom of the feed tube, is substantially equal to, but not necessarily the same as, the diameter of the grating disc" |
| "Grating Disc" (Claims 1, 6 & 8) | "A disc having grating teeth" |
| "A food pusher insertable into said feed tube and pressing fruit and vegetable down onto said grating disc for grating" (Claim 1) | "A food pusher insertable into the feed tube and capable of pressing fruit and vegetable inserted into the feed tube down onto the grating disc for grating" |
| "Bifurcated" (Claim 3) | "having a split or branching component or aspect"' |
| "Grating dish" (Claims 4 & 5) | "Grating disc" |

**IT IS SO ORDERED**.

Dated:  June 18, 2013



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California